IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00106-REB-KLM

PAUL I. POLLARD,

        Plaintiff,

v.

RICK SOARES,
MOLLY MARTINEZ,
ROBERT STEINBECK,
HENRY YBARRA,
DARRIN COE,
PATRICIA VAUGHT, and
JANE DOE (SOUCIE),

        Defendant(s).

_____

**AMENDED RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants Coe, Souchie,[1] Steinbeck, and Vaught's **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** [Docket No. 20; Filed June 29, 2009], **Defendant Soares' Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(6)** [Docket No. 26; Filed August 25, 2009], **Defendant Ybarra's Motion to Dismiss Pursuant to Fed. R. Civ. 12(b)(6)** [Docket No. 28; Filed September 23, 2009] and an **Order to Show Cause** regarding Defendant Martinez [Docket No. 35; Filed October 28, 2009].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.Colo.L.Civ.R. 72.1(C)(3), the Motions have been referred to this Court for recommendation. The Court has reviewed the Motions, Plaintiff's

_____

[1] Defendant Souchie's name is misspelled in the Amended Complaint.

1

Responses to the Motions [Docket No. 22, 33], Defendants' Replies to Plaintiff's Responses to the Motions to Dismiss [Docket No. 23, 40], and the Order to Show Cause [Docket No. 39], as well as the Amended Complaint [Docket No. 9] and applicable case law, and is advised in the premises. For the reasons set forth below, I RECOMMEND that the Motions be **GRANTED.**  I also RECOMMEND that the claims against Defendant Martinez be dismissed without prejudice.

### I. Background

Plaintiff is an inmate in the custody of the Colorado Department of Corrections ("CDOC"). *Amended Complaint* [#9] at 6.  He is serving a 24-year sentence imposed by the Arapahoe County District Court.  *Id.* at 13.[2]   Plaintiff was charged with sexual assault in the first degree, second degree kidnaping, menacing, possession of a weapon by a previous offender, and possession of a deadly weapon. *Id.* at 23. According to the Presentence Report and charging documents, Monique McCoy was at Plaintiff's residence on November 27, 1999. *Id.* at 16.  When she refused to have sex with him, Plaintiff placed a pistol to her head and then sexually assaulted her. *Id.*  Plaintiff refused to let her leave his residence. *Id.*  Over a 12-hour period, Ms. McCoy was repeatedly raped by Plaintiff. *Id.* at 16-17.  A jury found Plaintiff not guilty of sexual assault, *id.* at 32, but he pled guilty to a weapons possession charge, possession of a controlled substance, and third degree assault. *Id.* at 13, 18.

In January 2003, the CDOC held a hearing to determine whether Plaintiff should be

---

[2] Plaintiff has attached the state court records to the Amended Complaint.  The Court may consider the attachments to a complaint in resolving a motion to dismiss.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

designated a sex offender. *Id.* at 6, 19. The hearing panel consisted of Defendants Martinez, Steinbeck, and Ybarra. *Id.* Defendants determined that Plaintiff should be classified as a sex offender based on the sexually violent and abusive conduct detailed in the Presentence Report. *Id.* at 19.  The crux of Plaintiff's Amended Complaint is that he should not have been classified as a sex offender or subjected to the consequences of such a classification because he has not been convicted of any sex crimes. *Id.* at 5–6.

Plaintiff brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging four claims of relief. The named Defendants are Rick Soares, Warden of the Arkansas Valley Correctional Facility ("AVCF"); Molly Martinez, Robert Steinbeck, and Henry Ybarra, members of the administrative hearing panel at AVCF that classified Plaintiff as a sex offender; and Darrin Coe, Patricia Vaught, and Jane Doe (Defendant Souchie), clinical social workers in the state prison mental health department.  Claim One alleges that Plaintiff's Fourteenth Amendment right to due process was violated when Defendant Soares authorized, and Defendants Martinez, Steinbeck, and Ybarra held, an administrative hearing during which Plaintiff was designated as a sex offender. *Id.* at 7. Claim One further alleges that Defendants Coe and Vaught violated Plaintiff's rights by creating a false psychological profile as the basis for their decision to restrict his reading materials.   *Id.* Claim Two alleges that all seven Defendants violated Plaintiff's Eighth Amendment protection against cruel and unusual punishment by characterizing him as a sex offender despite his acquittal on the sex crime charges. *Id.* at 8. Claim Three alleges that Defendants Soares, Martinez, Steinbeck, and Ybarra violated Plaintiff's rights by "exceed[ing] the jurisdictional authority of the department of corrections" and ignoring the findings of the district court in Colorado where Plaintiff was tried. *Id.* at 9. Finally, Claim

Four alleges that Defendant Souchie refused to provide mental health services to Plaintiff unless he signed a form admitting his sexual offenses, thereby violating the Plaintiff's Fifth Amendment right against self-incrimination. *Id.* at 10. Plaintiff seeks an order reversing the decision designating him as a sex offender, a notification to publishers/vendors that Plaintiff is not a sex offender, and monetary damages. *Amended Complaint* [#9] at 12.

Defendants have asserted a number of grounds to support their motions to dismiss. Defendants argue that Plaintiff's claims are barred by the statute of limitations and the doctrine of *res judicata*. They also assert that Plaintiff has failed to sufficiently allege constitutional claims under 42 U.S.C. § 1983. Defendants also contend that they are entitled to qualified immunity as to Plaintiff's monetary claims.

## II. Analysis

### A. Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the alleged misconduct."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must

5

follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### B.    Statute of Limitations

Defendants Ybarra and Soares argue that Plaintiff's claims are barred by the applicable statute of limitations.  Actions brought pursuant to 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994).  In Colorado, the limitation on a personal injury claim brought pursuant to Section 1983 is two years. *See* Colo. Rev. Stat. § 13-80-102(g) (creating a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "[a]ll other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir. 1993) (applying Colo. Rev. Stat. § 13-80-102 to a § 1983 claim).  However, federal law rather than state law determines when a cause of action accrues. *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994).  Federal law provides that "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* at 969.  That is, "[a] civil rights action accrues when facts that would support a cause of action are or should be apparent." *Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir. 1995) (citations omitted).

Once a defendant satisfies his initial burden to show that a claim is untimely, the burden shifts to Plaintiff to establish a later accrual date or to show that there is a basis to toll the accrual date. *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir.

1980).   Although the statute of limitations is an affirmative defense, the issue may be resolved on a motion to dismiss where the application of the limitations period is apparent on the face of the complaint.  *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008); *Aldrich*, 627 F.2d at 1041 n. 4.

Plaintiff's claims arise from a sex offender classification hearing held in January 2003.  *Amended Complaint* [#9] at 6.  He alleges that Defendant Soares violated his due process rights by allowing CDOC employees under his supervision to conduct the hearing without jurisdiction.  *Id.*  Plaintiff alleges that Defendant Ybarra violated his due process rights by participating in the sex offender classification hearing and by finding Plaintiff guilty of criminal matters that had been resolved previously in state court.  *Id.*  He also alleges that Ybarra and Soares subjected him to cruel and unusual punishment in violation of the Eighth Amendment by changing "the character of [his] sentence by making him a violent offender, making him ineligible for progression to lower security and community facilities, and may require him to register as a sex offender once released from prison."  *Id.* at 7.

Defendants Ybarra and Soares contend that Plaintiff's claims accrued in January 2003, the date of the sex offender classification hearing.  They assert that Plaintiff did not initiate his case until January 9, 2009, the date when he signed and dated the original complaint, more than two years after he knew or had reason to know of the existence and cause of the injuries which are the basis of his constitutional claims.  Thus, they argue that pursuant to the two-year statute of limitations set forth in Colo. Rev. Stat. § 13-80-102, Plaintiff's claims are time barred.

Plaintiff claims that although the hearing was held in 2003, he was not aware of the consequences of that decision until years later.  He claims that he first became aware of

the restrictions to his liberty as a result of being labeled a sex offender in January 2007 when he was given a mental health treatment plan and in December 2008 when he was denied community corrections placement. *Response* [#33] at 4. Plaintiff contends that the limitations period is subject to tolling because the treatment plan which caused his injury was concealed from him until January 2007. *Id.* at 5. In the alternative, Plaintiff asserts that the injurious acts resulting from his classification as a sex offender continued until December 2008 and, therefore, his cause of action accrued at that time.

The issue of tolling is governed by Colorado state law. *See Fratus*, 49 F.3d at 675. Colorado's equitable tolling provisions are "limited to situations in which either the defendant has wrongfully impeded the plaintiff's ability to bring the claim or truly extraordinary circumstances prevented the plaintiff from filing his or her claim despite diligent efforts." *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996). The doctrine of tolling is "not favored," and the Colorado Supreme Court "has never found" that the requisite "extraordinary circumstances" existed to justify tolling a statute of limitations. *Olson v. State Farm Mut. Auto Ins. Co.*, 174 P.3d 849, 858 (Colo. App. 2007); *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 150 (Colo. 2007). Finally, the burden lies with Plaintiff to prove that the statute of limitations has been equitably tolled. *See Roberts v. Barreras,* 484 F.3d 1236, 1241 (10th Cir. 2007).

Plaintiff also argues that his constitutional injuries were ongoing and continued from the January 2003 classification hearing until December 2008. The continuing violation doctrine, if it applied, "would permit a plaintiff to challenge incidents that occurred outside of the statute of limitations if the incidents 'are sufficiently related and thereby constitute a continuing pattern' of wrongful conduct." *Fogle v. Pierson*, No. 05-cv-01211-MSK-CBS,

8

2008 WL 821803, at *5 (D. Colo. Mar. 26, 2008) (unpublished opinion) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)). The doctrine, which is employed in Title VII litigation, has never been definitively applied in this context.  Indeed, courts in this district have recognized that the "Tenth Circuit has not determined whether the continuing violation doctrine should be applied to complaints filed under 42 U.S.C. § 1983" and *Bivens*.  *Id.* at *4.  While there is no clear precedent regarding the doctrine's application to the present case, the Tenth Circuit has conclusively held that the continuing violation doctrine "is simply not applicable" to other civil rights actions brought pursuant to Title 42.  *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997) (rejecting the doctrine's application to 42 U.S.C. § 1981 claims).

I need not decide whether equitable tolling and the continuing violation doctrine apply here.  Because the statute of limitations defense is not patently clear from the face of the Amended Complaint, nor based on adequately developed facts, the Court is unable to determine on a motion to dismiss whether Plaintiff's claims are barred by the statute of limitations.  *See Dummar*, 543 F.3d at 619;  *Aldrich*, 627 F.2d at 1041 n. 4.  Accordingly, the Court declines to grant the Motions on this ground.

### C.    Res Judicata and Collateral Estoppel

Defendant Ybarra moves to dismiss on the ground that Plaintiff's claim that his due process rights were violated by his classification as a sex offender is barred by the doctrines of collateral estoppel and *res judicata* because Plaintiff has already litigated this claim in a state court proceeding.  *Motion* [#28] at 5.  Though occasionally used to refer to the narrower concept of claim preclusion, the doctrine of *res judicata* traditionally subsumes

9

both claim preclusion and issue preclusion, which is sometimes called collateral estoppel. *See, e.g., Carter v. City of Emporia*, 815 F.2d 617, n. 2 (10th Cir. 1987). "The doctrine of res judicata, or claim preclusion, will prevent a party from re-litigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).

Res judicata bars a subsequent *claim* if four elements are met: "(1) the prior suit must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the party must have had a full and fair opportunity to litigate the claim in the prior suit." *In re Mersmann*, 505 F.3d 1033, 1049 (10th Cir. 2007)(citing *Nwosun v. Gen. Mills Rests.*, 124 F.3d 1255, 1257 (10th Cir. 1997). Collateral estoppel bars relitigation of an *issue* if: (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *Nichols v. Bd. of Cty. Commissioners of County of La Plata, Colorado*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Bebo Constr. v. Mattox & O'Brien, P.C.*, 990 F.2d 78, 84-85 (Colo. 1999). Defendants have the burden of setting forth facts sufficient to satisfy the elements of *res judicata* and collateral estoppel. *Bebo Constr.*, 990 F.2d at 85; *Nwosum*, 124 F.3d at 1255.

Defendant Ybarra has submitted records of a state court proceeding where Plaintiff sought reversal of the CDOC's decision classifying him as a sex offender. *Motion* [#28] Ex.

A-1.[3]   On February 28, 2003, Plaintiff, through counsel, in Crowley County District Court, Colorado, filed a complaint pursuant to Rule 106(a)(4) of the Colorado Rules of Civil Procedure alleging that (1) the CDOC decision to classify him as a sex offender was arbitrary and capricious and unsupported by competent evidence; (2) the classification hearing deprived Plaintiff  of due process; and (3) CDOC lacked authority to classify him as a sex offender because he was not convicted of a sex offense, has no history of sex offenses, and the alleged sexual assault was not the factual basis for his conviction.  *Id.* Defendants Soares, Steinbeck, Martinez, and Ybarra were named in that complaint.  The state court denied Plaintiff's complaint and concluded that there was sufficient evidence to support the decision to classify Plaintiff as a sex offender and that the hearing comported with due process.  *Motion* [#28] Ex. A-2.

Colo. R. Civ. P. 106(a)(4) provides for relief "[w]here any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law."  The Colorado Supreme Court has "held that an aggrieved party may bring a constitutional challenge against the relevant governmental body in any proceeding under" Rule 106(a)(4).  *Trans Shuttle, Inc. v. Pub. Util. Comm'n*, 24 Fed. App. 856, 861 (10th Cir. 2001) (citing *Tri-State Generation & Transmission Co. v.  City of Thornton*, 647 P.2d 670, 676 n. 7 (Colo. 1982). When there is a challenge to the sufficiency

---

[3] The Court may take judicial notice of public records in a prior state court proceeding without converting a motion to dismiss into one for summary judgment. *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1251 n. 4 (10th Cir. 2001).  I am permitted to consider facts subject to judicial notice in ruling on a motion to dismiss.  *Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006).

of the evidence, a prison official's decision must be upheld if there is "some evidence" to support it. *Kodama v. Johnson*, 786 P.2d 417, 420 (Colo. 1990).

The doctrines of *res judicata* and collateral estoppel apply here. The identity of the parties in the two actions is the same. One of the issues raised here and in state court is Plaintiff's due process rights during the classification hearing. Plaintiff was represented by counsel in the state proceeding and had a full and fair opportunity to litigate his claims there.

Plaintiff asserts that his claim should not be precluded because the Defendants did not provide to the state court "a complete record of the documents tendered as evidence by the Plaintiff ...." *Response* [#33] at 5-6. This claim was explicitly rejected by the state court. *Motion* [#28] Ex. A-2 at 4. Therefore, Claim One, the due process claim pertaining to the sex offender classification hearing, is barred by the state court proceeding. Claim One should be dismissed as to Defendant Ybarra. Defendants Soares, Martinez, and Steinbeck are also named in Claim One. *Res judicata* can be raised by a Court *sua sponte*. *Burrell v. Armijo*, 456 F.3d 1159, 1176 (10th Cir. 2006). Therefore, the due process claim against Defendants Soares, Martinez and Steinbeck should also be dismissed.

### D.    Personal Participation

Defendant Soares moves to dismiss the claims against him because Plaintiff has not alleged sufficient facts to demonstrate Soares' personal participation in the claimed unconstitutional conduct.[4] Evidence of a party's personal participation in an alleged

---

[4] Defendant Ybarra moves to dismiss Claim Four against him on the same basis. However, Ybarra is not named as a defendant in Claim Four. *See Amended Complaint* [#9] at 10.

constitutional violation is essential to proceeding with a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and the Defendant's participation, control or direction. *Id.* at 1151-52; *Whitelow v. Stanley*, 06-cv-02256-ZLW-MEH, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007) (unpublished decision). Furthermore, general, conclusory allegations, without supporting factual averments, are insufficient to state a constitutional claim against a defendant. *Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). Instead, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff's claims against Defendant Soares are based on Soares' position as Warden of the Arkansas Valley Correctional Facility, where Plaintiff was confined at the time he was classified as a sex offender. *Amended Complaint* [#9] at 2. Plaintiff's complaint must be based upon more than the mere allegation that because an individual is a supervisor, he is also responsible for Plaintiff's alleged injuries. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79 (1986); *see also Woodward v. City of Worland*, 977 F.2d 1392, 1399-00 (10th Cir. 1992) (noting that in order to plead the liability of a supervisor, a plaintiff must show he personally directed the alleged offensive conduct or knew plaintiff's rights were being violated but did not prevent it); *Benglen v. Zavaras*, 7 F. Supp. 2d 1171, 1173-74 (D. Colo. 1998) (requiring an "affirmative link" between supervisor's own conduct and the alleged violation). "Because 'mere negligence' is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with

13

deliberate indifference that a constitutional violation would occur." *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (quoting *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)).

Plaintiff alleges the following facts in Count One in support of his claims against Defendant Soares: "While the Plaintiff was in his custody and control, defendant Rick Soares allowed employees under his supervision to conduct a hearing in which the Plaintiff's guilt or innocence, in subject matters outside CDOC jurisdiction, were determined." *Amended Complaint* [#9] at 7. Plaintiff has neither alleged that Soares participated in the classification hearing nor that Soares had actual knowledge of Plaintiff's case. The remaining allegations in the Amended Complaint make no specific mention of Soares or any actions taken by him.

Plaintiff has failed to allege any personal participation of Defendant Soares or an "affirmative link" between any conduct attributable to him and Plaintiff's alleged injuries other than his position of authority as Warden. Plaintiff has not satisfied his pleading burden as to Defendant Soares. *See Jojola v. Chavez*, 55 F.3d 488, 490-91 (10th Cir. 1995). Accordingly, all claims against Defendant Soares should be dismissed due to Plaintiff's failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### E.   Due Process

Procedural due process protects the individual against "arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). While it is true that "the constitutional rights that prisoners possess are more limited in scope than the constitutional

14

rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 229 (2001),

"[t]here is no iron curtain drawn between the Constitution and the prisons of this country."

*Wolff*, 418 U.S. at 555-56.   In general, a plaintiff must make two showings in order to

proceed on a procedural due process claim.   *See Bartell v. Aurora Pub. Sch.*, 263 F.3d

1143, 1149 (10th Cir. 2001).   First, a plaintiff must demonstrate that he possesses a

protected liberty or property interest.   *Id.*   Second, a plaintiff must show the procedures

utilized were inadequate under the circumstances.   *Id.* at 1149.

The Constitution does not in itself create any liberty or property interest and

therefore "[t]he Due Process Clause standing alone confers no liberty interest in freedom

from state action 'within the sentence imposed.'"   *Sandin v. Conner*, 515 U.S. 472, 480

(1995) (citation omitted).   Rather, liberty interests "are created and their dimensions are

defined by existing rules or understandings that stem from an independent source such as

state law-rules or understandings that secure benefits and that support claims of

entitlement to those benefits."   *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577

(1972).   For prisoners, a liberty interest is only found in a "restraint which, while not

exceeding the sentence in such an unexpected manner as to give rise to protection by the

Due Process Clause of its own force . . ., nonetheless imposes atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin*, 515 U.S.

at 484.

An inmate has a protected liberty interest in not being labeled a sex offender and is

entitled to due process before receiving such a label.   *Chambers v. Colorado Dep't of Corr.*,

205 F.3d 1237, 1243 (10th Cir. 2000).   The procedural requirements for a sex offender

classification decision are set forth in *Wolff, supra*.   *Gwinn v. Awmiller*, 354 F.3d 1211, 1219

15

(10th Cir. 2004); *see also Neal v. Shimoda*, 131 F.3d 818, 830 (9th Cir. 1997). Those requirements are: notice of the charges, an opportunity to present witnesses and evidence in defense of the charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Gwinn*, 354 F.3d at 1219. Additionally, due process requires "some evidence" to support the decision and an impartial decisionmaker. *Wolff*, 418 U.S. at 592.

Plaintiff challenges the evidence relied on by Defendants to classify him as a sex offender. In determining whether a factfinder's decision is supported by sufficient evidence, the court need not conduct an "examination of the entire record, independent assessment of witnesses' credibility or weighing of the evidence. Instead, the relevant question is whether there is any evidence that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985). The decision can be upheld if the evidence supporting the decision is "meager." *Id.* at 457. For example, the decision can be supported by hearsay evidence in a presentence report, *Gwinn*, 354 F.3d at 1219, or an uncorroborated incident report, *Longstreth v. Franklin*, 240 Fed. Appx. 264, 267 (10th Cir. 2007)(unpublished decision).

Plaintiff was declared a sex offender while incarcerated based on the Presentence Report in his case, combined with Plaintiff's inability to offer "any credible explanation that would avoid the conclusion that [he] behaved in a sexually violent and/or abusive manner." *Amended Complaint* [#9] at 19. In detailing the offense conduct, the Presentence Report stated that the Plaintiff repeatedly sexually assaulted a female acquaintance while she visited him at his home. *Id.* at 16. Even though Plaintiff was acquitted of criminal sexual assault charges. *Id.* at 6, 32, a "not guilty" verdict is not an ultimate determination of

16

innocence—it "merely proves the existence of a reasonable doubt as to his guilt." *U.S. v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984).  An acquittal still leaves open the possibility of liability based on a lower burden of proof. *Id.* at 362.   An inmate who has not been convicted of a sex offense may be classified as a sex offender if he receives due process under the *Wolff* standard.  *Gwinn*, 354 F.3d at 1218-19.

Plaintiff has not alleged that he was denied a hearing or that the hearing panel was not impartial or did not give him an opportunity to present evidence. Plaintiff only claims that basing his sex offender designation on the victim's allegations after Plaintiff was acquitted of sexual assault charges essentially amounted to "finding Plaintiff guilty in criminal matters resolved previously in state district court." *Amended Complaint* [#9] at 7.   However, the hearing panel did not declare him guilty of a sexual crime; it clearly stated that Plaintiff was being classified as a sex offender based on behavior described in the Presentence Report. *Id.* at 19. This Report provides sufficient evidence to meet the "meager" evidentiary requirement for due process, as the Report describes multiple sexual assaults. *Id.* at 16. Although Plaintiff may have presented evidence at trial to support a reasonable doubt as to his guilt, the hearing panel is bound by much lower evidentiary standard, and found that Plaintiff failed to produce credible evidence that he had not "behaved in a sexually violent and/or abusive manner." *Id.* at 19.

Because the hearing panel satisfied all the requirements imposed by *Wolff* to provide Plaintiff with due process when he was classified as a sex offender, Plaintiff has not alleged facts that show that the hearing panel violated his due process rights.

Plaintiff also claims that his due process rights were violated when Defendants Coe and Vaught "created an adverse psychological profile of Plaintiff" without deference to his

17

acquittal in state court and  without considering "information in Plaintiff's mental health file that disputed the existence of sexual crimes in his criminal history." *Amended Complaint* [#9] at 7.  Plaintiff asserts that Defendants' actions were without supporting reasons or evidence and violated his right to due process.  *Response* [#22] at 3.  The only factual support Plaintiff provides for this claim are copies of forms showing that these two Defendants increased Plaintiff's reading material restrictions.  *Amended Complaint* [#9] at 20–22.[5]

The documents prepared by Defendants Coe and Vaught do not indicate that they made an independent determination about Plaintiff's criminal or sexual history.  Moreover, as stated above, the CDOC had sufficient evidence to classify Plaintiff as a sex offender.  Therefore, Defendants Coe and Vaught did not violate Plaintiff's right to due process.

### F.    Cruel and Unusual Punishment Claim

Plaintiff claims that by declaring him a sex offender, all Defendants have violated his Eighth Amendment rights.  *Amended Complaint* [#9] at 8.  Specifically, Plaintiff alleges that Defendants "change[d] the character of Plaintiff's sentence by making him a violent offender, making him ineligible for progression to lower[-]security and community facilities, and may require him to register as a sex offender once released from prison." *Id.*

---

[5] Although not a model of clarity, Plaintiff's claim does not appear to be challenging the restrictions *per se*, but the conclusion by Coe and Vaught that he is a sex offender.  Even assuming he had done so, Plaintiff could not have stated a cognizable First Amendment claim based on the restrictions.  Reading restrictions do not offend the First Amendment when related to legitimate penological goals. *See Beard v. Banks*, 548 U.S. 521, 525 (2006) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *Jones v. Salt Lake County*, 503 F.3d 1147, 1156 (10th Cir. 2007) (allowing restrictions on sexually explicit materials for all prisoners); *Waterman v. Farmer*, 183 F.3d 208, 220 (3d Cir. 1999) (allowing restrictions on sexually explicit materials for sex offenders in prison). Th goal of the reading restrictions on sexually explicit material was rehabilitation, *Amended Complaint* [#9] at 20–22, which is a legitimate penological goal. *See Jordan v. Sosa*, 577 F.Supp. 2d 1162, 1179 (D. Colo. 2008).

The Eighth Amendment requires prison officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citation omitted). An Eighth Amendment claim has both an objective and subjective element. *Id.* The objective component requires that the alleged deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). However, prison conditions may be "restrictive and even harsh" without a constitutional violation occurring. *Barney*, 143 F.3d at 1311 (citation omitted). That is, "only those deprivations denying the minimal civilized measures of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal citation omitted). To satisfy this element, the inmate must allege facts showing a deprivation of "a single, identifiable human need such as food, warmth, or exercise . . . ." *Id.* at 304.

The subjective component is satisfied only if the "'[prison] official knows of and disregards an excessive risk to inmate health and safety.'" *Barney*, 143 F.3d at 1310 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "It is not enough to establish that the official should have known of the risk of harm." *Id.* Instead, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 838. When considering these components, the Court's inquiry turns not only on the severity of the alleged deprivation, but also on its duration. *See Barney*, 143 F.3d at 1311 ("An important factor in determining whether the conditions of confinement meet constitutional standards is the length of the incarceration.").

19

Plaintiff claims that labeling him a violent sex offender and making him ineligible for progression to a lower security level and community facilities is cruel and unusual punishment. *Amended Complaint* [#9] at 8.  As noted above, the CDOC had sufficient evidence to classify Plaintiff as a sex offender. Losing certain privileges as the consequence of CDOC classification as a sex offender, such as the ability to progress to lower-security facilities, does not amount to cruel and unusual punishment. *See Gwinn*, 354 F.3d at 1228. To the extent that certain restrictions on prisoners are "restrictive or even harsh," they are often the natural consequences of crimes for which the prisoners were sentenced. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Plaintiff's ineligibility for certain privileges is not cruel and unusual punishment.   Accordingly, Claim Two should be dismissed.[6]

### G.   Jurisdiction Claim

Plaintiff asserts that Defendants Soares, Martinez, Steinbeck and Ybarra "exceeded the jurisdictional authority of the [D]epartment of [C]orrections, and undermined the original jurisdiction of the state district court" by declaring him a sex offender in an administrative hearing. *Amended Complaint* [#9] at 9.  Plaintiff claims that this was a violation of the Sixth Amendment. *Id.*

The Sixth Amendment provides a number of guarantees regarding criminal trials, including the right to a speedy and public trial by an impartial jury, the right to confront witnesses, and the right to the assistance of counsel. U.S. Const. amend. VI.  Plaintiff was

---

[6] Plaintiff also claims that he "may" be required to register as a sex offender upon his release.  This claim is without merit.  Under Colorado law, since Plaintiff has not been *convicted* of a sex offense, it appears that he will not be required to register as a sex offender upon his release from prison.  *See* Colo. Rev. Stat. § 16-22-108(1)(d)(II).

provided with a criminal trial and does not allege any defects in that proceeding.  Thus, Claim Three does not allege a Sixth Amendment violation.

To the extent that Plaintiff intends to state a Fifth Amendment claim based on double jeopardy,  prison disciplinary proceedings are not part of a criminal prosecution, and therefore "do not implicate double jeopardy concerns." *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994) (internal citations omitted).  This principle also applies to situations where a prisoner loses certain privileges after refusing to participate in sex offender treatment. *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004) (holding that loss of visitation with minor child as consequence of failure to participate in sex offender treatment program did not implicate double jeopardy concerns).

Assuming Plaintiff intends to allege that his classification as a sex offender constituted the administrative panel's invasion of his acquittal by jury in state court, then he essentially alleges a due process claim similar to that made in Claim One. *Amended Complaint* [#9] at 7 ("[Defendants] abused their discretion and exceeded jurisdictional authority by finding Plaintiff guilty in criminal matters resolved previously in the state district court.").  As stated above, such a claim is without merit because Plaintiff's due process rights have not been violated by the Defendants.

Even broadly construed, Claim Three does not state a claim for a violation of Plaintiff's constitutional rights. Therefore, Claim Three should be dismissed.

### H.    Fifth Amendment

Claim Four states that Defendant Souchie "refused to provide the Plaintiff with mental health assistance" unless Plaintiff agreed to sign a form admitting his sexual crimes

and his propensity to commit such crimes again in the future, thereby violating his Fifth Amendment right against self incrimination. *Amended Complaint* [#9] at 10.  Plaintiff has not alleged that he sought out and was denied mental health services, but only that he has been excluded from the SOTMP (and the services the program provides) as a result of his failure to admit that he has previously committed sexual crimes.[7]  A consequence of his failing to complete the SOTMP, Plaintiff alleges, is that he will be unable to "progress to the community." *Complaint* [#9] at 6. In his Response to the Motions, Plaintiff asserts that Claim Four is meant to challenge his exclusion from the SOTMP. *Plaintiff's Response* [#22] at 6.  The substance of Plaintiff's claim, then, is that his Fifth Amendment right against self-incrimination was violated when he refused to admit that he was guilty of a sex crime and, as a result, he was denied eligibility to participate in the SOTMP.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The right against self-incrimination not only applies to a criminal prosecution, but "any other proceeding, civil or criminal ... where the answers might incriminate [Plaintiff] in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). In addition, the state cannot impose "substantial penalties" against a person for exercising his Fifth Amendment right. *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

---

[7] To the extent that Plaintiff intended to claim that he has been denied medical services altogether because of his failure to admit to sexual crimes, he has not alleged that he has sought out such services or pointed to any evidence that services have been denied to him besides his exclusion from the SOTMP. Without sufficient factual allegations to allow the Court to draw a reasonable inference that a defendant committed the conduct alleged in the complaint, a claim cannot survive a motion to dismiss. *Iqbal*, 129 S.Ct. at 949.

The denial of certain privileges as a result of failure to comply with a sex offender treatment program does not implicate Fifth Amendment self-incrimination concerns "if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life." *McKune v. Lile*, 536 U.S. 24, 37-38 (2002). Requiring an inmate to agree to certain conditions before receiving the benefits of a sex offender treatment program does not constitute impermissible compulsion under the Fifth Amendment. *Wirsching v. Colorado*, 360 F.3d 1191, 1203-04 (10th Cir. 2004); *see also Searcy v. Simmons*, 299 F.3d 1220, 1226-27 (10th Cir. 2002) (holding that self-incrimination privilege not violated even though refusal to make admissions required for participation in sex offender program caused inmate to lose good-time credits). As the *Searcy* Court noted, the inmate's inability to accrue good-time credits at a faster pace upon admission to a sex offender program "does not so much describe compulsion as it does display the consequences of [the inmate's] own individual choice." 299 F.3d at 1226. The choice was either "take advantage of the benefit [that the state was under no obligation to provide] . . . or turn down that benefit in order to avoid what [the inmate] feared, perhaps legitimately, would be self-incriminating statements." *Id.*

Plaintiff's refusal to comply with the SOTMP's requirement that he admit past sexual offenses represents a similar choice and comes along with inevitable consequences. These consequences do not rise to the level of compulsion required to state a claim for a violation of Plaintiff's right against self-incrimination. Accordingly, Defendant Souchie's Motion to Dismiss Claim Four should be granted.

## I.   Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers protection from trial and other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Court's analysis of qualified immunity in the context of a 12(b)(6) motion is a two-part process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, the next ... is to ask whether the right was clearly established." *Id.* In *Pearson v. Callahan*, 129 S.Ct. 808 (2009), the Supreme Court held that a court may review these factors in any order, using its discretion to determine which of the factors should be reviewed first in light of the circumstances of the case. *Id.* at 818. As I have concluded above, Plaintiff has not stated a tenable § 1983 claim for any of the constitutional violations alleged in the Amended Complaint. Therefore, it is unnecessary to consider the second prong of the qualified immunity analysis. *See Saucier*, 533 U.S. at 201. Defendants are entitled to qualified immunity on Plaintiff's claims for monetary relief.

## J.   Service of Process

Defendant Martinez has not been served with the Summons and Amended Complaint in this action and, therefore, is not currently a proper party. The Amended Complaint was filed on April 20, 2009 [#9].  By an Order dated April 27, 2009 [# 12], the United States Marshal was directed to serve a copy of the Summons and Amended Complaint on all Defendants in the above-captioned matter. On August 24, 2009, the Summons was returned unexecuted for Defendant Martinez with a notation that the Marshal had unsuccessfully attempted to serve her five times at the address provided by her former employer, the Colorado Department of Corrections, but that she "no longer lives at above address.  Location unknown." [# 24].

Because more than 120 days have passed since the filing of the Amended Complaint, on October 28, 2009, the Court ordered Plaintiff to show cause why I should not recommend that the case against Defendant Martinez be dismissed pursuant to Fed. R. Civ. P. 4(m) & 41(b).  [#35].  Plaintiff was advised that failure to serve Defendant Martinez, respond and show good cause for Plaintiff's failure to properly serve this Defendant or provide a current address to allow the United States Marshal to effect service, would result in this Court issuing a recommendation to dismiss Plaintiff's action as to her.  In response to the Order to Show Cause, Plaintiff states that the CDOC would have information on their employees that he does not have access to.  He requests additional time to effect service or, in the alternative, that the Court dismiss the claims against Martinez without prejudice. *Response* [#39] at 2.

Fed. R. Civ. P. 4(m) authorizes the Court to dismiss a party's case for his failure to timely serve a summons and complaint unless the party can show good cause for his

failure.  In this case, Plaintiff failed to provide good cause for his failure to timely serve Defendant Martinez.  Although the Court may extend the time for a plaintiff to serve a defendant even without a showing of good cause, *Espinoza v. United States*, 52 F.3d 838, 840-41 (10th Cir. 1995), the Court is not inclined to do so here.  The case relates to incidents that allegedly began in January 2003.  Moreover, Plaintiff was warned that his failure to provide sufficient information for the Court to effect service would result in a recommendation of dismissal.  *See Raeth v. Bank One*, 05-cv-02644-WDM-BNB, 2008 WL 410596, *3 at & n.4 (D. Colo. Feb. 13, 2008) (unpublished decision).

While Fed.  R. Civ. P. 4(c) requires that the Court effect service of the Summons and Complaint for plaintiffs proceeding *in forma pauperis*, Plaintiff must provide sufficient information for the Court to do so.  *See Hill v. Ortiz*, No. 07-cv-00571-LTB-CBS, 2008 WL 2020289, at *6 (D. Colo. May 9, 2008) (unpublished decision).  Plaintiff has not provided any such information to the Court and has not proffered to the Court any reason to expect that service will be effectuated on Defendant Martinez in a timely manner.  Therefore, pursuant to Fed. R. Civ. P. 4(m), the claims against Defendant Martinez should be dismissed without prejudice for failure of service.

### III. Conclusion

For the reasons stated herein, I **RECOMMEND** that Defendants Coe, Souchie, Steinbeck, and Vaught's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#20] be **GRANTED** and that the claims against Defendants Coe, Souchie, Steinbeck, and Vaught be **DISMISSED with prejudice**.

I FURTHER **RECOMMEND** that Defendant Soares' Motion to Dismiss Pursuant

to Fed. R. Civ. P. 12(b)(6) [#26] be **GRANTED** and that the claims against Defendant Soares be **DISMISSED with prejudice**.

I FURTHER **RECOMMEND** that Defendant Ybarra's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#28] be **GRANTED** and that the claims against Defendant Ybarra be **DISMISSED with prejudice**.

I FURTHER **RECOMMEND** that the claims against Defendant Martinez be **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Amended Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985), and also waives appellate review of both factual and legal questions, *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

DATED: December 4, 2009

BY THE COURT:

/s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix